IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WILDA CARR JONES,
   Plaintiff,

v.                Civil Action No. 3:20-cv-792

VIRGINIA COMMONWEALTH
UNIVERSITY, et al.,
   Defendants.

## OPINION

  Wilda Carr Jones, an African American woman, worked as Project Coordinator for Virginia Commonwealth University's ("VCU") School of Nursing. After about a year and a half, VCU terminated Jones's employment. Jones contends that VCU fired her because of her race and in retaliation for filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). VCU says that it rightfully fired Jones for poor job performance.

  Jones brings one claim against only VCU: race-based retaliation, in violation of Title VII of the Civil Rights Act of 1964 (Count One). She also brings three claims against both VCU and Dr. Pamela Parsons, her supervisor: race-based disparate treatment, in violation of 42 U.S.C. § 1981 (Count Two); retaliation, in violation of § 1981 (Count Three); and deprivation of rights, in violation of 42 U.S.C. § 1983 (Count Four).

  VCU and Parsons (collectively, "the defendants") move to dismiss Jones's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, the Court will grant in part and deny in part the defendants' motion.

## I. FACTS ALLEGED IN THE COMPLAINT

On November 16, 2016, Jones began working for VCU as a Project Coordinator in the School of Nursing. She held that position until May 25, 2018, when VCU terminated her employment. During her tenure at VCU, Dr. Pamela Parsons, a white woman, directly supervised Jones.

Jones claims that she and Parsons shared a tense relationship during her employment. Throughout her first several months on the job, Jones repeatedly requested additional trainings and meetings with Parsons, but Parsons rejected these requests. According to Jones, "Parsons's disinterest in [her] employment was evident from the outset." (ECF No. 1-1 ¶ 16.) Jones says that "Parsons did not provide the same resources and support to [her] as she did to other Caucasian employees," (*id.* ¶ 23), and often complained about Jones's work. Parsons compared Jones's work with that of her predecessor, a white woman, commenting that her predecessor was "'great' at her job and Jones was 'not on her level.'" (*Id.* ¶ 31.) Jones claims that she "was limited in her position based on Parsons's administrative skills." (*Id.* ¶ 22.)

In Jones's first performance review, Parsons evaluated her job performance between November 1, 2016, and August 16, 2017. Although Jones says this evaluation "did not reflect unsatisfactory performance" and exhibited "at or above proficiency in all areas," (*id.* ¶ 55), Parsons rated Jones as "developing" in most areas. (ECF No. 3-1.)[1]

On April 3, 2017, Parsons sent Jones "a counseling memo that documented five (5) examples of inattention to detail and not meeting deadlines." (ECF No. 3-2; *see also* ECF 1-1 ¶

---

[1] When ruling on a motion to dismiss, "a court may 'consider documents . . . attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018) (quoting *Sec'y of State for Defence v. Trimble Navigations Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)).

53.) Parsons and Jones met on April 28, 2017, "to review [her] progress." (ECF No. 3-2.) Finding "three (3) additional examples of inattention to detail and lack of follow through," Parsons issued Jones a second counseling memo. (*Id.*)

On February 22, 2018, Jones received a "progressive disciplinary notice and written reprimand with imposed probation" from Parsons, "the first warning Jones had received since April 2017." (ECF No. 1-1 ¶ 53.) Soon after, in February or March 2018, Jones discovered her job listed on VCU's job board. Parsons also "announced" "on numerous occasions" that she planned to replace Jones with Jeff Petraco, a white man, and assign Petraco projects she had previously promised to Jones. (*Id.* ¶ 58.)

On May 4, 2018, Parsons called Jones into her office at the end of the workday and handed her a newspaper article about an upcoming museum exhibit about the Ku Klux Klan. The article featured pictures of "several traditional KKK hooded costumes." (*Id.* ¶ 61.) Parsons asked Jones, "Do you know about this?" (*Id.* ¶ 60.) "Jones shared that she was unaware of the exhibit, its contents, or the purpose of the exhibit, but showed no interest in attending such an event." (*Id.* ¶ 62.) This interaction left Jones "shocked and appalled." (*Id.* ¶ 63.)

On May 14, 2018, Jones spoke with Greg Council of VCU Employee Relations. Jones told Council that she had concerns about working under Parsons and that she felt Parsons subjected her to a hostile work environment. Later that day, Jones received a notification of termination from Parsons, listing May 16 as her last day. Jones complained to Council, who told her that Parsons did not follow proper procedure, and that Jones should not go home. The next day, after Council encouraged her to do so, Jones filed an Equal Employment Opportunity ("EEO") Incident report with the University. Jones's termination became effective on May 25, 2018, and "Petraco immediately replaced Jones." (*Id.* ¶ 80.)

On July 16, 2018, Jones filed a complaint through VCU's formal grievance process, separate from the EEO report. Jones's grievance continued through the first and second steps of the process to no avail. On September 13, 2018, Jones appealed her grievance to step three, a panel hearing. VCU scheduled the hearing for November 16, 2018. Meanwhile, VCU's EEO office never addressed her EEO complaint.

On October 13, 2018, Jones filed a charge of discrimination with the EEOC. On or about November 1, 2018, VCU received its notification of Jones's EEOC charge. On November 15, 2018, a VCU representative called Jones and told her that VCU's grievance policy prohibited further consideration of a grievance "if there are also matters being adjudicated through 'another university, state or federal process.'" (*Id.* ¶ 91.) To ensure that VCU would hold the hearing scheduled for the next day, Jones withdrew her EEOC charge that same day.

On May 13, 2019, Jones filed a second EEOC charge, alleging that VCU's "refusal to allow [her] to have her [EEOC charge] reviewed by the Commission was retaliatory for engaging in protected activity." (*Id.* ¶ 96.) The EEOC issued Jones a "Notice of Right to Sue" on June 21, 2019. (*Id.* ¶ 98.)

Jones filed this lawsuit in Richmond City Circuit Court on September 19, 2019. The defendants removed the action to this district on October 8, 2020.

## II. DISCUSSION[2]

The defendants move to dismiss Jones's complaint pursuant Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), for lack of subject matter jurisdiction and for failure to state a

---

[2] The defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). A motion under Rule 12(b)(1) tests the court's subject matter jurisdiction. The plaintiff bears the burden of proving proper subject matter jurisdiction as the party asserting jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

4

claim respectively. In their Rule 12(b)(1) arguments, the defendants contend that state sovereign immunity bars Counts Two through Four against VCU and Parsons in her official capacity. The Court agrees and for the reasons set forth below, will dismiss Counts Two through Four to the extent Jones asserts these claims against VCU and Parsons in her official capacity. In their Rule 12(b)(6) arguments, the defendants say that Count One against VCU, and Counts Two through Four against Parsons in her personal capacity fail to state a claim. The Court, however, disagrees and will deny the motion to dismiss as to Count One against VCU, and Counts Two through Four against Parsons in her personal capacity.

### A. Motion to Dismiss Pursuant to Rule 12(b)(1): State Sovereign Immunity

The defendants, citing state sovereign immunity, move the Court to dismiss Counts Two through Four against VCU and Parsons in her official capacity pursuant to Rule 12(b)(1). Sovereign immunity is a jurisdictional issue. *See Rsch. Triangle Inst. v. Bd. of Governors*, 132 F.3d 985, 987, 990 (4th Cir. 1997). State sovereign immunity protects the state from actions at law for damages and from suits in equity to restrain or compel governmental action. *All. to Save the Mattaponi v. Commonwealth*, 270 Va. 423, 455, 621 S.E.2d 78, 96 (2005). This immunity extends to state agents and state instrumentalities, in addition to the state itself. *Rector & Visitors*

---

A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a facially plausible claim to relief. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

*of Univ. of Va. v. Carter*, 267 Va. 242, 245, 591 S.E.2d 76, 78 (2004). The Eleventh Amendment exemplifies, but does not limit, the broader concept of state sovereign immunity. *See Stewart v. North Carolina*, 393 F.3d 484, 488 (4th Cir. 2005).

A claim against a state agency in federal court may overcome state sovereign immunity in three ways: (1) Congress abrogating state immunity; (2) a state expressly consenting to suit or waiving its immunity; or (3) a plaintiff seeking only prospective or injunctive relief against a state agent. See *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *Edelman v. Jordan*, 415 U.S. 651, 673 (1974); *Ex parte Young*, 209 U.S. 123, 159-60 (1908).

The first two exceptions do not apply here. Congress has not abrogated state immunity as to claims brought pursuant to §§ 1981 and 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989); *Herron v. Va. Commonwealth Univ.*, 366 F. Supp. 2d 355, 363–64 (E.D. Va. 2004). Nor has Virginia waived its sovereign immunity as to claims under §§ 1981 and 1983. *See Ibrahim v. Old Dominion Univ.*, No. 88-259, 1989 U.S. Dist. LEXIS 18059, at *68–70 ("Virginia has not waived its immunity to suits under [§§ 1981 and 1983]."). Below, the Court discusses the third exception, raised by Jones's claims against Parsons in her official capacity.

*1. Counts II through IV Against VCU*

"VCU qualifies as a state agency and enjoys the privileges of immunity." *Drew v. Va. Commonwealth Univ., Parking & Transp.*, No. 3:17cv429, 2019 WL 1508593, at *1 (E.D. Va. Mar. 27, 2018). Because Congress has not abrogated nor has Virginia waived its sovereign immunity as to claims under §§ 1981 and 1983, the Court will dismiss Counts Two through Four against VCU.

6

### *2. Counts II through IV Against Parsons in her Official Capacity*

A suit brought against a "state official in . . . her official capacity is . . . no different than a suit against the State itself." *Will*, 491 U.S. at 71. State sovereign immunity, therefore, can protect a state official sued in her official capacity. But not always. Pursuant to *Ex parte Young*, a court may award injunctive relief against a state officer acting in his or her official capacity following a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)); *see also Clark v. Va. Dep't of State Police*, 292 Va. 725, 793 S.E.2d 1, 4 (2016). A court may not, however, award retrospective relief under *Ex parte Young*. In other words, "[r]elief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant." *Papasan v. Allain*, 478 U.S. 265, 278 (1986).

Jones's prayer for relief includes requests for (1) a declaratory judgment finding the "complained of" acts by the defendants unlawful, (2) front pay, and (3) back pay. Jones does not request reinstatement to her former position at VCU. (ECF No. 1-1, at 18.)

#### *a. Declaratory Judgment*

The *Ex parte Young* exception "does not permit judgments against state officers declaring that they violated federal law in the past." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). The plaintiff requests just that. The Court, therefore, lacks the jurisdiction to issue the requested declaratory judgment.

*b. Back Pay*

Jones seeks back pay as compensation for what she would have earned "but for Defendant's unlawful discrimination and retaliation." (ECF No. 1-1, at 18.) These payments would not "bring an end to present violations of federal law," as would permissible prospective injunctive relief. *Papasan*, 478 U.S. at 278. The Court, therefore, also lacks the jurisdiction to award back pay. *See Allen v. Coll. of William & Mary*, 245 F. Supp. 2d 777, 791 (E.D. Va. 2003) ("[B]ack pay is not a permissible form of injunctive relief" under *Ex parte Young*.)

*c. Front Pay*

Jones also seeks front pay, which "is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001). The Fourth Circuit has not addressed whether state sovereign immunity bars the collection of front pay as a remedy for suits against state agents in their official capacity. But "those courts of appeals to have considered the issue have found that [front pay] is" precluded by state sovereign immunity. *Camacho-Morales v. Caldero*, 68 F. Supp. 3d 261, 274 (D.P.R. 2014) (citing *Campbell v. Ark. Dep't of Corr.*, 155 F.3d 950, 962 (8th Cir. 1998); *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 697 (3d Cir. 1996); *Freeman v. Mich. Dep't of State*, 808 F.2d 1174, 1179 (6th Cir. 1987)).

Some courts in this district, including this one, however, have considered front pay an acceptable form of prospective relief. *See, e.g., White v. Va. Bd. for People with Disabilities*, No. 3:18cv360, 2019 WL 413546, at *3 (E.D. Va. Feb. 1, 2019); *Pickering v. Va. State Police*, 59 F. Supp. 3d 742, 747 (E.D. Va. 2014). In both *White* and *Pickering*, however, the plaintiffs also sought reinstatement, fashioning their requests for front pay as alternatives to reinstatement, an acceptable form of prospective relief. In this case, Jones seeks only front pay, not reinstatement.

The Court, therefore, finds that Jones's request for front pay "is tantamount to an award of damages for a past violation of federal law." *Papasan*, 478 U.S. at 278. Thus, the Court lacks the jurisdiction to award front pay in this case. *See Weihua Huang v. Rector & Visitors of the Univ. of Va.*, No. 3:11cv50, 2013 U.S. Dist. LEXIS 34186 (W.D. Va. Mar. 7, 2013) (denying the plaintiff's request for front pay because the remedy "is not intended to halt a present or continuing violation of federal law").

\* \* \*

Jones does not request prospective remedies "that serve[] directly to bring an end to a present violation of federal law"; instead, she seeks retrospective relief designed to compensate her for injuries she allegedly sustained in the past. *Papasan*, 478 U.S. at 278. Because the Court lacks jurisdiction to grant Jones this relief, the Court will dismiss Counts Two through Four of her complaint to the extent Jones brings these claims against Parsons in her official capacity.

### B. Motion to Dismiss Pursuant to Rule 12(b)(6): Failure to State a Claim

#### 1. Count One: Title VII Retaliation Claim Against VCU

The defendants argue that Jones fails to state a Title VII claim for retaliation against VCU and, therefore, the Court must dismiss it. Title VII states that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge [of discrimination]." 42 U.S.C. § 2000e-3(a). "A plaintiff may prove that an employer took action with . . . retaliatory intent through direct evidence [of retaliation] or through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*." *Strothers v. City of Laurel*, 895 F.3d 317, 327 (4th Cir. 2018).

According to the Fourth Circuit, direct evidence of retaliation is "evidence that the employer 'announced, admitted, or otherwise unmistakably indicated that [the forbidden

9

consideration] was a determining factor'" in the challenged conduct. *Stover v. Lincoln Publ'g., Inc.*, 73 F.3d 358, 1995 WL 764180, at *2 (4th Cir. 1995) (alteration in original) (quoting *Cline v. Roadway Express, Inc.*, 689 F.2d 481, 485 (4th Cir. 1982)). The Eighth Circuit more recently stated that "[d]irect evidence of retaliation is evidence that demonstrates a specific link between a materially adverse action and the protected conduct, sufficient to support a finding by a reasonable fact finder that the harmful adverse action was in retaliation for the protected conduct." *Young-Losee v. Graphic Packaging Int'l, Inc.*, 631 F.3d 909, 912 (8th Cir. 2011).

Here, VCU made Jones choose between continuing to pursue her first EEOC charge and participating in the University's internal grievance process. The Court recognizes that VCU's enforcement of its "one or the other" policy did not preclude Jones from *ever* pursuing her EEOC complaint; VCU forced this choice at a time when Jones would still have time to refile her EEOC complaint after the conclusion of the internal process. But VCU's policy delayed Jones's access to her Title VII remedies, and a successful Title VII claimant can suffer tremendous harm because of a delayed remedy. Thus, the Court finds that Jones sufficiently pleads direct evidence of retaliation.

VCU disputes whether the enforcement of this "one or the other" policy amounts to an "adverse action." Courts deem actions materially adverse if the action "would likely have 'dissuaded a reasonable worker'" from engaging in the protected activity. *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006). Although Jones could, and did, end up filing her EEOC complaint after the VCU internal process concluded, the decision VCU forced Jones to make would have dissuaded a reasonable worker—as it did Jones—from continuing to pursue her EEOC complaint. Title VII's antiretaliation provision "seeks to prevent employer interference with

10

'unfettered access' to Title VII's remedial mechanisms." *Id.* at 68. VCU's "one or the other" policy fettered Jones's access to Title VII's remedial mechanisms.

The Court can imagine legitimate reasons why VCU enacted this "one or the other" policy. But the policy, disguised as benign bureaucracy, frustrates employee access to Title VII remedies. More specifically, in retaliation for an employee filing her EEOC complaint, VCU makes the employee choose, at least in the near term, between pursuing the internal grievance process and her Title VII remedies. This is not the "'unfettered access' to Title VII's remedial mechanisms" that the law's antiretaliation provision seeks to protect. *Id.* Thus, a reasonable factfinder could conclude that the choice VCU forced Jones to make—between pursuing VCU's internal dispute process and her EEOC complaint—amounted to a "harmful adverse action . . . in retaliation for" Jones filing the EEOC complaint. *Young-Lossee*, 631 F.3d at 912. Stated differently, *but for* filing her EEOC charge, VCU would have allowed Jones's grievance to proceed through the internal process. Consequently, the Court will deny the defendants' motion to dismiss Count One.

*2. Counts Two - Four: Against Parsons in her Individual Capacity*

"[W]hen suit is brought against a state actor, § 1983 is the 'exclusive federal remedy for violation of the rights guaranteed in § 1981.'" *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989)). The Court, therefore, construes the remaining three counts as two: (1) a discrimination claim, brought under §§ 1981 and 1983, and (2) a retaliation claim, brought under §§ 1981 and 1983. *See Davis v. Durham Mental Health Developmental Disabilities Substance Abuse Area Auth.*, 320 F. Supp. 2d 378, 403 (M.D.N.C. 2004) (explaining that when an individual asserts a claim under § 1983 for rights protected by § 1981, the "§ 1981 claim in effect merges with § 1983, and courts treat the claims as a single claim").

*a. Discrimination Claim*

To survive a motion to dismiss, a plaintiff alleging discrimination "must plead facts that, when all reasonable inferences are drawn in the plaintiff's favor . . . would permit finding either that the plaintiff has pled a 'direct' case or that plaintiff has made a prima facie case." *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 817 (E.D. Va. 2016).

*i. Direct Evidence*

"In establishing evidence of discrimination, derogatory remarks may constitute direct evidence, as long as the remarks were related to the employment decision in question and were not stray or isolated." *McCray v. Pee Dee Reg'l Transp. Auth.*, 263 F. App'x 301, 305 (4th Cir. 2008). In this case, the disturbing May 4, 2018 incident involving the newspaper article that featured a Ku Klux Klan exhibit preceded Jones's receipt of her termination notification by just ten days. The Court finds this incident sufficiently contemporaneous to constitute direct evidence of race discrimination. *See Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511–12 (4th Cir. 1994) (statement made two years before employee's termination was too remote to serve as evidence of age discrimination). A statement must, however, be more than contemporary with the employment decision to constitute direct evidence. The statement must also relate to the employment decision in question—here, Jones's termination. In other words, the plaintiff "must illustrate a nexus between the negative attitude"—here, racism—"and the employment action." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 608 (4th Cir. 1990), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). At this stage of litigation, drawing all inferences in favor of the plaintiff, the Court reasonably infers that the May 4 exchange and the racism it evidenced played a role in Jones's firing. Because the Court finds that Jones sufficiently pleads direct evidence of

discrimination, Jones's discrimination claim will proceed against Parsons in her individual capacity.

### ii. Prima Facie Case

Even if Parsons did not sufficiently plead direct evidence of discrimination, however, the claim would still survive as she "plead[s] sufficient plausible facts to establish" a prima facie case of discrimination. *Martinez v. Constellis, LLC*, No. 3:19cv720, 2020 U.S. Dist. LEXIS 142709, at *6 (E.D. Va. Aug. 10, 2020). To make a prima facie case of discrimination,[3] Jones must show "(1) that she was a member of a protected racial, ethnic, or other group; (2) that she experienced an adverse employment action; (3) that at the time of the adverse employment action, she was performing her job at a level that met her employer's legitimate expectations," *Ze-Ze v. Kaiser Permanente Mid-Atl. States Regions, Inc.*, 833 F. Supp. 2d 543, 548 (E.D. Va. 2011), and (4) that the defendants treated her "differently than similarly situated employees outside the protected class." *Brockman v. Snow*, 217 F. App'x 201, 205 (4th Cir. 2007).

The defendants concede that Jones pleads facts sufficient to show the first two elements of a prima facie case of discrimination. They do not, however, concede the second two elements. For the reasons below, the Court finds that Jones sufficiently pleads all four elements of a prima facie case of discrimination.

### 1. Legitimate Performance Expectations

Jones says she "performed her job duties in accordance with VCU's legitimate expectations." (ECF No. 1-1 ¶ 111.) The defendants disagree, however, citing the two counseling

---

[3] "Under Title VII and either § 1981 or § 1983, the elements of the required prima facie case are the same." *Gairola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985); *see also Sanders v. Tikras Tech. Sols. Corp.*, 725 F. App'x 228, 229 (4th Cir. 2018). Accordingly, Title VII and § 1983 cases provide legal principles that inform the Court's analysis of Jones's § 1981 claim.

memos Jones received in April 2017, her 2017 performance evaluation, and the February 2018 disciplinary notice and written reprimand. Although slim factual allegations support Jones's assertion that she satisfied the defendants' legitimate expectations and several performance reviews rate Jones unfavorably, the Court finds—for two reasons—that Jones's complaint sufficiently pleads her satisfaction of the defendants' expectations.

First, this case remains at an early stage of litigation; the defendants' motion to dismiss "test[s] 'the sufficiency of a complaint. *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 281 (E.D. Va. 1995) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992), *cert. denied*, 510 U.S. 820 (1993)). It does "not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"[4] *Id.* Consequently, at this stage, the Court considers whether Jones's complaint sufficiently alleges discrimination; it does not "resolve [the] contest surrounding" whether Jones's job performance satisfied the defendants' legitimate expectations. *Id.* As the case proceeds, Jones may establish that she met her employer's legitimate performance expectations. Maybe she will show that the employment expectations she failed to meet lacked legitimacy. Or, perhaps, she cannot make such a showing. It remains too early to tell. Thus, at this point, the Court cannot find that "it appears beyond all doubt that [Jones] can prove not set of facts in support of [her] claim that would entitle [her] to relief." *Trulock*, 275 F. 3d at 405.

Second, Parsons, who Jones accuses of discriminating against her, generated each performance review that the defendants cite. According to Jones, "Parsons often attempted to undermine [Jones's] skills and performance to paint a picture of poor performance, through her

---

[4] "Ordinarily, a complaint should not be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of [her] claim that would entitle [her] to relief." *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001).

comments . . . and written documentation to others." (ECF No. 1-1 ¶ 52.) Jones's allegations, therefore, cast doubt upon the accuracy of these unfavorable evaluations.[5]

Thus, accepting Jones's allegations as true and reading the complaint in the light most favorable to her, Jones plausibly alleges that her job performance satisfied the defendants' legitimate expectations.

### 2. *Differing Treatment of Those Similarly Situated, Outside Protected Class*

Jones says that Parsons treated her white counterparts favorably. Specifically, Jones alleges that Parsons "routinely allowed [her] Caucasian counterparts . . . liberty to do their jobs and provided support when necessary," while not providing Jones such support or liberty. (ECF No. 1-1 ¶¶ 47–48.) These "Caucasian counterparts . . . worked in various other administrative positions," presumably for Parsons. (*Id.* ¶ 47.) Although Jones does not explicitly allege that she is similarly situated to her "Caucasian counterparts," the Court reasonably infers such an allegation when reading the complaint "in the light most favorable to" Jones. *Darcangelo v. Verizon Commc'ns., Inc.*, 292 F.3d 181, 189 (4th Cir. 2002).

"Employees are similarly situated where they 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Martinez*, 2020 U.S. Dist. LEXIS 142709, at *8 (alteration in original) (quoting *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010)). Although Jones does not directly allege these

---

[5] "In assessing whether plaintiff complied with [her employer's] expectations, the Fourth Circuit has made clear that 'it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.'" *Sadeghi v. Inova Health. Sys.*, 251 F. Supp. 3d 978, 992 (E.D. Va. 2017) (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)). That said, "the plaintiff is free to demonstrate that the employer's qualifications or expectations are not, in fact, 'legitimate.'" *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 517 (4th Cir. 2006). These principles, however, become more significant at the summary judgment stage.

commonalities, her use of the word "counterparts" saves her discrimination claim from dismissal. Merriam-Webster defines "counterpart" as "one remarkably similar to another" and "one having the same function or characteristics as another." *Counterpart*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/counterpart (last visited Dec. 21, 2020). Thus, accepting all Jones's well-pleaded factual allegations as true, and making all reasonable inferences in her favor, Jones plausibly alleges that Parsons treated her "differently than similarly situated employees outside the protected class." *Brockman*, 217 F. App'x at 205.

\*         \*         \*

For these reasons, Jones pleads a prima facie case of discrimination. The Court will, therefore, deny the defendants' motion to dismiss as to Jones's discrimination claim against Parsons in her personal capacity.

### b. Retaliation Claim

"In order to establish a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) the employer took a materially adverse action against her; and (3) there is a causal connection between the protected activity and the adverse action." *Mascone v. Am. Physical Soc'y, Inc.*, 404 F. App'x 762, 765 (4th Cir. 2010). First, VCU notes that Jones's complaint does not indicate "which, if any, protected activity Jones engaged in." (ECF No. 3, at 23.) But even if Jones did engage in protected activity, VCU says Jones's retaliation claim still fails because she does not show a causal link between a protected activity and a materially adverse action. The Court disagrees.

The record shows a termination—a materially adverse action—and Jones's engagement in various protected activities. Jones's complaint, however, does not indicate which protected

activity gives rise to her retaliation claim against Parsons.[6] "Protected activities include making a charge, participating in a hearing under Title VII, and making informal complaints." *El v. Tek Sys., Inc.*, 311 F. Supp. 2d 516, 520 (E.D. Va. 2002). The Court identifies several "protected activities" in the days before Jones's termination, including: (1) Jones's May 14, 2018 discussion with Greg Council in VCU Employee Relation "to address [Jones's] concerns regarding working under Parsons and being subjected to a hostile work environment;" (2) Jones's second conversation with Council that same day regarding the "second Due Process Memorandum," which notified Jones of "Parsons's intent to terminate her employment with VCU; and (3) Jones's filing of the VCU Equal Employment Opportunity Incident Report on May 15, 2018. (ECF No. 1-1, ¶¶ 66, 69, 71.)

Jones engaged in each of these protected activities less than two weeks before VCU terminated her employment on May 25, 2018. The temporal proximity of these protected activities and Jones's termination allows the Court to reasonably infer a causal link between the two —even in the absence of an allegation that Parsons knew of the protected activities. *See S.B. ex rel. A.L. v. Bd. of Educ.*, 819 F.3d 69, 78 (4th Cir. 2016) (explaining that temporal proximity alone "may be sufficient to make an initial prima facie showing of causation," even at the motion for summary judgment stage); *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 706 (4th Cir. 2001) (indicating that temporal proximity between a termination and protected activity alone raises a genuine dispute of material fact).

---

[6] Jones's brief in opposition to the defendants' motion to dismiss discusses her retaliation claim in an entirely different manner than her allegations in the complaint. (ECF No. 5, at 15–18.) When ruling on a 12(b)(6) motion, a court may consider the complaint, the motion to dismiss, and any documents attached to either "so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Thus, the Court considers Jones's retaliation claim against Parsons as she pleads it in her complaint, not as she reframes it in her brief in opposition to the defendants' motion.

Jones, therefore, pleads facts that show various protected activities, her termination of employment, and a causal link between the two. Thus, the Court will deny the defendant's motion to dismiss as to Jones's retaliation claim against Parsons in her personal capacity.

### c. *Qualified Immunity*

Parsons says that even if Jones sufficiently alleges the discrimination and retaliation claims against Parsons in her personal capacity, the Court should still dismiss the claims because qualified immunity protects Parsons. Qualified immunity protects a government official from liability in § 1983 actions arising from the performance of discretionary actions. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity applies so long as the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.*

Parsons says that qualified immunity applies because she did not violate Jones's right "to be free from unlawful discrimination and retaliation." (ECF No. 3, at 26.) For all the reasons detailed above, however, the Court finds that Jones plausibly alleges that Parsons discrimination and retaliated against her in violation of §§ 1981 and 1983. Thus, the Court declines to dismiss Jones's discrimination and retaliation claims at this early stage based on qualified immunity. *See Willis v. Blevins*, 966 F. Supp. 2d 646, 652 (E.D. Va. 2013) ("[Q]ualified immunity is peculiarly well-suited for resolution at the summary judgment stage" because of the factual questions that courts must answer in order to decide whether it applies).

## V. **CONCLUSION**

For the foregoing reasons, the Court will grant in part and deny in part the defendant's motion to dismiss. (ECF No. 2.)

The Court merges Jones's § 1983 claim into Counts Two and Three.

The Court will dismiss Jones's retaliation and discrimination claims against VCU and Parsons in her official capacity (Counts Two and Three) and the § 1983 claim against VCU and Parsons (Count Four).

Jones's retaliation claims against VCU (Count One) and against Parsons in her personal capacity (Count Three) will survive the defendant's motion, as will her discrimination claim against Parsons in her personal capacity (Count Two).

Thus, the following three claims remain: (1) a retaliation claim, brought under Title VII, against VCU; (2) a discrimination claim, brought under §§ 1981 and 1983, against Parsons in her personal capacity; and (3) a retaliation claim, brought under §§ 1981 and 1983, against Parsons in her personal capacity.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record and to the pro se plaintiff.

Date: 6 January 2021
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge